UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ELIA ISABEL VALENZUELA, ) | |
| ) | |
| Plaintiff, ) | Case No. EDCV 14-1486 AJW |
| ) | |
| v. ) | MEMORANDUM OF DECISION |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security ("SSI") income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed her current application for SSI benefits on August 13, 2011, alleging that she had been disabled since February 4, 2011, due to psychotic disorder, not otherwise specified, and polysubstance abuse disorder. [Administrative Record ("AR") 18, 79].[1] Plaintiff's application was denied initially and upon reconsideration. [JS 2; AR 16, 96-100, 107-112]. Plaintiff requested an administrative hearing, which was

---

[1] Plaintiff filed a prior application for SSI and was found to be not disabled in a final hearing decision dated December 7, 2009. [AR 16, 51-62].

conducted before an administrative law judge (the "ALJ") on February 28, 2013. [AR 16, 26, 114-116]. Plaintiff, who was represented by an attorney, testified on her own behalf. [AR 16]. Plaintiff's mother, Maria Valenzuela, appeared and testified as a witness with the assistance of a Spanish language interpreter. [AR 16]. Testimony was also received from vocational expert Corinne J. Porter. [AR 16].

On March 15, 2013, the ALJ issued a written decision denying plaintiff's current application for benefits. [AR 26]. The ALJ found that there had not been a showing of a changed circumstance material to the determination of disability, and that the presumption of continuing nondisability had not been rebutted. [AR 26]. Accordingly, the ALJ adopted the findings of the prior ALJ regarding plaintiff's residual functional capacity ("RFC"). [AR 26]. The ALJ found that plaintiff has severe impairments consisting of psychotic disorder, not otherwise specified, and polysubstance abuse disorder, and that she retains the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: plaintiff is "is limited to simple, repetitive tasks, not involving contact with the general public, and involving only non-intense interaction with co-workers and supervisors, and not involving responsibility for the safety of others." [AR 18, 20]. The ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, and therefore the ALJ concluded that plaintiff was not disabled at any time since the date she filed her current application. [AR 26]. Subsequently, the Appeals Council denied plaintiff's request for review. [AR 1-3].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

### Statement of Disputed Issues

The sole disputed issue is whether the ALJ properly considered the opinion of the treating physician, Dr. Barrozo. [JS 3].

### Discussion

**Effect of prior determination of nondisability**

The Commissioner's December 2009 decision finding plaintiff not disabled [AR 54-62] creates a rebuttable presumption that plaintiff retained the ability to work after that date. See Schneider v. Comm'r of Social Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988); Social Security Acquiescence Ruling 97-4(9). A claimant may overcome the presumption of continuing nondisability by showing "changed circumstances," such as an increase in the severity of her impairments or a previously unlitigated impairment. Once a claimant overcomes the presumption, she must also prove that she is disabled. See Schneider, 223 F.3d at 973-974; Lester v. Chater, 81 F.3d 821, 827-828 (9th Cir. 1995); Chavez, 844 F.2d at 693 (internal quotation marks omitted).

**Treating physician's opinion**

Plaintiff contends that the ALJ erred in evaluating the opinion of Donna Barrozo, M.D., plaintiff's treating physician at San Bernardino County Department of Behavioral Health. [See JS 3-9].

The ALJ noted that plaintiff began treatment with Dr. Barrozo on April 13, 2011 for auditory hallucinations and paranoid delusions. [AR 23]. Dr. Barrozo assessed plaintiff with psychotic disorder, not

otherwise specified; a history of polysubstance abuse; and a GAF score of 55.[2] [AR 23, 264].

In November 2012, Dr. Barrozo completed a two-page "Ability to Do Work-Related Activities (Mental)" form. [AR 523-524]. Dr. Barrozo opined that plaintiff was "unable to meet competitive standards" with respect to completing a normal workday and workweek; accepting instructions and responding appropriately to criticism from supervisors; dealing with normal work stress; being aware of normal hazards; and traveling to unfamiliar places. [AR 23-24, 277-278]. Dr. Barrozo rated plaintiff's ability to perform a number of other work-related abilities as "seriously limited, but not precluded." [AR 277-278]. She also opined that plaintiff would miss more than four days a month due to her impairments or treatment. [AR 24, 278].

When asked to explain the limitations and include the medical and or clinical findings that support her assessment Dr. Barrozo gave the following explanations: (1) "[d]ue to client's paranoia of people and auditory hallucinations client has difficulty completing day to day activities;" (2) "[c]lient complains of a decrease in concentration which limits ability to carry out tasks and instructions;" (3) "[b]ecause client complains of paranoia and hallucinations, client is on a daily regiment of medications that does not completely reduce her symptoms;" and (4) "[c]lient states that she sees shadows and often is unable to sleep." [AR 278].

The ALJ rejected Dr. Barrozo's opinion regarding plaintiff's ability to do work-related activities in favor of the opinions of the nonexamining state agency medical consultants. [AR 23-24]. Specifically, the ALJ found that plaintiff had nonexertional limitations restricting her to simple, repetitive tasks, not involving contact with the general public, and involving only non-intense interaction with co-workers and

---

[2] The GAF score is a "multiaxial" assessment that reflects a clinician's subjective judgment of a patient's overall level of functioning by asking the clinician to rate two components: the severity of a patient's psychological *symptoms,* or the patient's psychological, social, and occupational *functioning*. The GAF score is the lower of the symptom severity score or the functioning severity score. A GAF score of 51 through 60 signifies moderate symptoms, such as flat affect or occasional panic attacks, or moderate difficulty in social, occupational, or school functioning, such as having few friends or experiencing conflicts with peers or co-workers. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Multiaxial Assessment, 27-36 (rev. 2000)); see also Vargas v. Lambert, 159 F.3d 1161, 1164 (9th Cir. 1998) (describing a GAF score as "a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment").

supervisors, and not involving responsibility for the safety of others. [AR 20].

In general, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). A treating physician's opinion is entitled to greater weight than those of examining or nonexamining physicians because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual . . . ." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) and citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188); see, 20 C.F.R. §§ 404. 1502, 404. 1527(d)(2), 416.902, 416.927(d)(2).

If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r or Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tontapetyan, 242 F.3d at 1144, 1148-1149; Lester, 81 F.3d at 830-831. The opinion of a nonexamining physician normally is entitled to less deference than that of an examining and treating physician precisely because a nonexamining source does not have the opportunity to conduct an independent examination and does not have a treatment relationship with the claimant. See Andrews v. Shalala, 53 F.3d 1035, 1040-1041 (9th Cir. 1995). A nonexamining physician's conclusion, "with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician." Erickson v. Shalala, 9 F.3d 813, 818 n.7 (9th Cir. 1993) (emphasis omitted) (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990)).

The ALJ's stated reasons for rejecting Dr. Barrozo's controverted treating source opinion were not specific, legitimate, and supported by substantial evidence in the record, and therefore the AL. First, the ALJ drew negative inferences about Dr. Barrozo's motivation and the evidentiary basis for her opinion that were not warranted by the record. In explaining why she gave Dr. Barrozo's opinion "limited weight," the ALJ remarked that "[t]he possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality . . . is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension."

5

[AR 24]. The ALJ added that "[w]hile it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of [sic] record, as in the current case." [AR 24].

An ALJ may not reject a medical opinion that is favorable to the claimant merely because the ALJ suspects that the doctor is sympathetic to the claimant or the claimant solicited the doctor's opinion. See Reddick, 157 F.3d 715 at 727 ("[T]he mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report. Evidence of the circumstances under which the report was obtained and its consistency with other record, reports, or findings could, however, form a legitimate basis for evaluating the reliability of the report."); Lester, 81 F.3d at 832 ("The [Commissioner] may not assume that doctors routinely lie in order to help their patients collect disability benefits," but may "introduce evidence of actual improprieties" in physicians' opinion); Petty v. Astrue, 550 F. Supp. 2d 1089, 1099 (holding that the ALJ's conclusion that a treating physician was "sympathetic to the claimant and is trying to help her obtain disability" was not a clear and convincing reason for rejecting that doctor's opinion, and observing that "there is nothing remarkable about the fact that a doctor advocates his patient's cause") (citing McGoffin v. Barnhart, 288 F.3d 1248, 1253 (10th Cir. 2002) ("[A]n ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician.")).

The ALJ relied on three factors to support her assertion that Dr. Barrozo's opinion "departs substantially from the rest of the evidence of [sic] the record" and therefore suggested an improper motive on Dr. Barrozo's part. The first factor was that Dr. Barrozo "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the [plaintiff], and seemed to uncritically accept as true most, if not all, of what the [plaintiff] reported. Yet . . . there exist good reasons for questioning the reliability of the [plaintiff's] subjective complaints." [AR 24].

In appropriate circumstances, an ALJ may discredit a treating physicians' opinion because it is based on a claimant's properly discounted subjective complaints. See Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433-434 (9th Cir. 1988) (per curiam) (stating that medical conclusions are entitled to less weight to the extent that they rely on the claimant's properly discounted subjective history). The ALJ may have concluded that Dr. Barrozo relied "quite heavily" on plaintiff's subjective self-reports because two of the three explanations Dr. Barrozo provided for her answers on the assessment form reference

6

plaintiff's "statements" or "complaints." [AR 278]. However, the ALJ's conclusion that Dr. Barrozo relied wholly and uncritically on plaintiff's subjective complaints is unsupported by the record. Between February 2010 and May 2012, Dr. Barrozo personally observed and interviewed plaintiff, conducted mental status examinations, and monitored her response to various medications during about 15 office visits. [AR 237-271]. Plaintiff consistently described symptoms of hallucinations, delusions, paranoia, depression and inability to sleep. [AR 237-271]. Mental status examination findings included anxious mood and affect, auditory and visual hallucinations, and paranoid delusions. [AR 262]. It was not improper for Dr. Barrozo to base her opinion on plaintiff's subjective symptoms in conjunction with her clinical observations and mental status examination findings. See Ferrando v. Comm'r of Soc. Sec. Admin., 449 Fed. Appx. 610, 612 n.2 (9th Cir. 2011) ("[M]ental health professionals frequently rely on the combination of their observations and the patient's reports of symptoms (as do all doctors) . . . . To allow an ALJ to discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's subjective allegations' is to allow an end-run around our rules for evaluating medical opinions for the entire category of psychological disorders."). Dr. Barrozo had ample opportunity to evaluate the credibility of plaintiff's subjective symptoms, and she found those symptoms sufficiently credible to support her medical opinion regarding plaintiff's ability to do work-related activities. [AR 277-278]. See Ryan v. Comm'r of Social Sec., 528 F.3d 1194, 1199 (9th Cir. 2008) (holding that the ALJ did not provide clear and convincing reasons for rejecting an examining physician's opinion that the claimant was disabled by depression and anxiety "by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations. There is nothing in the record to suggest that [the physician] disbelieved [the claimant's] description of her symptoms, or that [the physician] relied on those descriptions more heavily than his own clinical observations in reaching the conclusion that [the claimant] was incapable of maintaining a regular work schedule.") (citing Edlund, 253 F.3d at 1159 ("In sum, the ALJ appears to have relied on her doubt's about [the claimant's] overall credibility to reject the entirety of [the examining psychologist's] report, including portions that [the psychologist] deemed to be reliable."); Regennitter v. Comm'r Soc. Sec. Admin., 166 F.3d 1294, 1300 (9th Cir. 1999) (holding that substantial evidence did not support the ALJ's finding that the examining psychologists improperly took the claimant's "statements at face value" where the psychologists' reports did not contain "any indication that [the claimant] was malingering or deceptive").

The second factor the ALJ relied on to impute an improper motive to Dr. Barrozo was that her opinion was conclusory. The ALJ noted that Dr. Barrozo's opinion contained "very little explanation of the evidence relied on in forming that opinion. Dr. Barrozo did not document positive objective clinical or diagnostic findings to support the functional assessment." [AR 24]. In general, an ALJ need not accept a physician's opinion that is conclusory and inadequately supported by clinical findings. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). It is true that Dr. Barrozo did not provide "objective" findings in support of her opinion; however the record shows that her opinion is supported by clinical findings. As discussed above Dr. Barrozo's mental status examination findings included anxious mood and affect, auditory and visual hallucinations, and paranoid delusions, support her opinion regarding plaintiff's ability to do work-related activities. [AR 262]. As the Sixth Circuit explained, "[a] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment." Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989). Consequently, "[w]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques." Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989) (quoting Poulin v. Bowen, 817 F.2d 865, 873-874 (D.C. Cir. 1987)); see also Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir. 2014) (holding that the ALJ erred in rejecting the opinion of a treating neurologist because the ALJ ignored most of the neurologist's treatment records and failed to recognize that the neurologist's check-the-box opinions "were based on significant experience with [the claimant] and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit"). The ALJ understated the nature and extent of the evidence in the record as a whole supporting Dr. Barrozo's opinion.

The third factor cited by the ALJ as evidence of impropriety by Dr. Barrozo was that her treatment records indicated that plaintiff was improving by complying with her medication and abstaining from polysubstance use, but Dr. Barrozo failed to mention polysubstance use in her opinion "and does not resolve this discrepancy." [AR 24]. An ALJ may reject a doctor's opinion that is inconsistent with that doctor's notes or with other substantial evidence in the record. See Bayliss, 427 F.3d at 1216; Batson, 359 F.3d at 1197. Dr. Barrozo's treatment notes include diagnoses of psychotic disorder NOS and polysubstance

dependence. [E.g., AR 238, 248, 256, 264]. Her check-box assessment does not mention either diagnosis; however, the ALJ erred in concluding that this created an unresolved "discrepancy" that suggested an impropriety on Dr. Barrozo's part or constituted a reason to discredit her opinion. The assessment form did not ask Dr. Barrozo for plaintiff's diagnoses, nor did it seek any information about substance use. The form included a checklist that asked Dr. Barrozo to rate plaintiff's abilities and aptitudes needed to do unskilled work. The form asked Dr. Barrozo to explain the limitations she described and to identify the medical or clinical findings that support her assessments, and she did so. The ALJ's skepticism may have been justified if Dr. Barrozo was asked to include her diagnoses on the form and omitted plaintiff's polysubstance use, but that was not the case. See Reddick, 157 F.3d at 722-723 (noting that it is impermissible for an ALJ to develop evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); cf. Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) (noting that "[a] treating doctor's silence on the claimant's work capacity does not constitute substantial evidence supporting an ALJ's functional capacity determination when the doctor was not asked to express an opinion on the matter and did not do so . . ." ).

      The ALJ also appears to have drawn a negative inference regarding the credibility of Dr. Barrozo's opinion because her treatment records indicated that plaintiff was improving with medication compliance and abstaining from polysubstance use. For example, the ALJ noted that in July 2011, plaintiff reported in that her medications were working because she was having a "lot less" auditory hallucinations and fewer visual hallucinations, and that in November 2012 plaintiff reported that her sleep was better. [AR 21 (citing AR 257, 288)]. During her November 2012 visit, however, plaintiff also reported that she still had "daily" auditory hallucinations and paranoia [AR 288], symptoms she consistently reported during her visits with Dr. Barrozo.  [See, e.g, AR 253, 256, 266, 269, 271]. Therefore, even though plaintiff reported "less paranoia" in November 2012, that evidence must be viewed in the context of Dr. Barrozo's reports as a whole. The Ninth Circuit has emphasized that "[c]ycles of improvement and debilitating symptoms are a common occurrence" in mental disorders, "and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working" because reports of improvement in mental health "must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." Garrison, 759 F.3d at 1017 (holding that where the claimant's psychiatric symptoms waxed and waned, her

diagnoses of post-traumatic stress syndrome and bipolar remained constant across all treatment records, and her GAF score consistently hovered around 50 to 55 even when she went to great lengths to minimize stressors in her life, the ALJ erred in concluding that a few short-lived periods of temporary improvement in her mental health symptoms undermined Garrison's testimony). Dr. Barrozo completed her functional assessment in November 2012 and concluded that plaintiff had numerous work-related functional limitations notwithstanding the reported improvement in her symptoms. Therefore, the evidence of improvement in Dr. Barrozo's notes is not a convincing reason for rejecting her opinion.

The ALJ failed to provide specific, legitimate reasons supported by substantial evidence for rejecting Dr. Barrozo's opinion.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however, should credit improperly rejected evidence and remand for an immediate award of benefits if: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

The ALJ did not articulate legally sufficient reasons for rejecting Dr. Barrozo's treating source opinion, which is credited as true as a matter of law. See Garrison, 759 F.3d at 1021-1022 (summarizing the Ninth Circuit's "crediting-as-true" jurisprudence, and explaining that for purposes of deciding whether

1  to credit evidence as true, the court will not consider "arguments against crediting evidence that the ALJ
2  did not make" or "whether the ALJ *might* have articulated a justification for rejecting a medical opinion")
3  (italics in original); Harman, 211 F.3d at 1179 (explaining that even if there are grounds on which the ALJ
4  could legitimately have relied to reject an examining physician's opinion, the "crediting as true" rule is
5  warranted in order to improve the performance of ALJs by requiring them to articulate those grounds in the
6  original decision and to discourage them from reaching a conclusion first, and then attempting to justify it
7  by ignoring evidence). Dr. Barrozo's opinion constitutes "changed circumstances" of an increase in the
8  severity of plaintiff's mental disorder that overcomes the presumption of continuing nondisability.

9        However, a remand for further administrative proceedings is the appropriate remedy because there
10 are outstanding issues remain to be decided before a determination of disability can be made, namely,
11 whether plaintiff can perform any work with the specific limitations described by Dr. Barrozo in her
12 improperly discredited opinion. Moreover, Dr. Barrozo diagnosed a history of polysubstance dependence.
13 [E.g., AR 238, 264]. If the Commissioner concludes on remand that plaintiff is disabled and has medical
14 evidence that plaintiff is addicted to drugs or alcohol, the Commissioner must determine whether substance
15 addiction is a contributing factor material to the determination of disability. See 20 C.F.R. §§ 404.1535(b),
16 416.935(b); Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007). Accordingly, a remand for further
17 administrative proceedings is the appropriate remedy. See Treichler v. Comm'r of Soc. Sec. Admin., 775
18 F.3d 1090, 1099 (9th Cir. 2014) (noting that only in "rare circumstances" should a court depart from the
19 "ordinary" rule of remanding for further administrative proceedings); Bunnell v. Barnhart, 336 F.3d 1112,
20 1115-1116 (9th Cir. 2003) (holding that although the ALJ improperly rejected the opinions of the treating
21 physicians, the claimant's subjective complaints, and lay witness testimony, several "outstanding issues"
22 remain to be resolved, including whether, according to a vocational expert, there was alternative work the
   claimant could perform).

///
///
///

**Conclusion**

For the reasons described above, the Commissioner's decision is reversed, and the case is remanded to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED**.

May 8, 2015

_____
ANDREW J. WISTRICH
UNITED STATES MAGISTRATE JUDGE